AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )         Case No.  **23mj1657**
)
White i-Phone )
Seizure No. 2023250100030201-0002 )
("Target Device") )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachement A, incorporated by reference herein.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A, incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 31 U.S.C. Sec. 3216, 3552 | Bulk Cash Smuggling |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Lindsey Fitch, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Lindsey Fitch*
Applicant's signature

Special Agent Lindsey Fitch, HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____Telephone____ *(specify reliable electronic means)*.

Date: 05/09/2023

Judge's signature

City and state: San Diego, CA          Bernard G. Skomal, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Special Agent Lindsey Fitch, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> White i-Phone
> Seizure No. 2023250100030201-0002
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 31, United States Code, Section 5332, as further described in Attachments B. The requested warrant relates to the investigation of Jose Ricardo CORONEL ("CORONEL"), and presently known and unknown co-conspirators, for bulk-cash smuggling and conspiracy to import narcotics. The Target Device is currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since July 2018. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. Based upon my training and experience as a law enforcement officer, I am

familiar with the ways in which bulk currency smugglers and narcotics traffickers conduct their business. During the course of my duties, I have (a) worked as a case agent, directing specific financial and drug-related investigations; (b) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking bulk cash and drugs; (c) participated in the execution of search warrants related to financial and drug investigations; (d) initiated and executed numerous arrests for financial and drug-related offenses, including Bulk Cash Smuggling into or out of the United States; and (e) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling of bulk cash and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of bulk cash smugglers, drug traffickers and those associated with the smuggling subculture.

5. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for bulk cash and narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving large quantities of bulk cash. Typically, load drivers engaged in smuggling bulk cash across the border from the United States into Mexico are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions when to cross the border, and, in some cases, where to retrieve the vehicle which will be used in the smuggling event. Bulk cash smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular telephones.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in bulk cash smuggling and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for

example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in bulk cash smuggling may yield evidence:

a. tending to indicate efforts to import/export bulk currency into or out of the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the import/export of bulk currency into or out of the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the import/export bulk currency into or out of the United States;

d. tending to identify travel to or presence at locations involved in the import/export of bulk currency into or out of the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On April 29, 2023, at approximately 5:44 PM, a San Diego Sheriff's Deputy conducted a vehicle stop on a 2015 white Nissan Versa bearing California license plates.[1]

---

[1] Prior to the events described in this affidavit, investigators had obtained court authority to place a GPS tracking device on the Nissan Versa and had placed it on the car. And, at the time of the stop in this case, the Deputy was aware of the location of the Versa from information provided by law enforcement partners and the GPS device. That said, I do not rely on any information learned from the GPS device in this affidavit.

The Nissan Versa was driving over the posted speed limit, which the Deputy recognized as a violation of California Vehicle Code Section 22349(a). The stop occurred off the Clairemont Mesa Drive exit on the southbound route of Interstate 5.

8. When the Deputy approached the Nissan Versa, she found the driver and registered owner of the car, CORONEL. In response to the Deputy's questions, CORONEL stated he was traveling home after shopping at the San Clemente outlet mall. The Deputy requested consent to search CORONEL's vehicle, to which he agreed. During a search of the vehicle, the Deputy observed that the seat had been built up upon a box and the carpet was glued in some areas. The Deputy requested the assistance of a Sheriff canine to screen the vehicle.

9. A Sheriff canine Deputy responded and utilized his trained canine to conduct a screening of the vehicle. During the canine screening of the vehicle, the Deputy received a positive alert to the front passenger seat of the vehicle.

10. The Deputy then informed CORONEL they had found a compartment and requested that he open the compartment. CORONEL admitted there was something bad in the vehicle, but that it was not drugs. When asked if there was money in the vehicle, CORONEL responded, "yes," but he did not know the amount. CORONEL then showed Deputies how to access the compartment.

11. The Deputy conducted a physical search of the compartment and discovered a white box containing bundles of U.S. currency. A total of seven (7) bundles of U.S. currency were removed from the compartment. The U.S. currency was later determined to total $46,000 USD.

12. CORONEL stated he was instructed to drive to Los Angeles and briefly leave the vehicle while someone else placed something in the vehicle. CORONEL admitted to being paid $300 for his involvement.

13. During the search of the vehicle, Deputies also discovered a white iPhone that CORONEL stated belonged to him.

14. Based upon my experience and training, consultation with other law enforcement officers experienced in bulk cash smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Device. Considering the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the smuggling of bulk cash into or out of the United States. Further, in my training and experience, bulk cash smugglers may be involved in the planning and coordination of a bulk cash smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the bulk cash. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on March 29, 2023, up to and including April 29, 2023.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.

1 Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//

## CONCLUSION

19. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 31, United States Code, Sections 5332. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*
Special Agent Lindsey Fitch
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 9th day of May, 2023.

*[signature]*

Honorable Bernard G. Skomal
United States Magistrate Judge

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>White iPhone
>Seizure No. 2023250100030201-0002
>(**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 29, 2023, up to and including April 29, 2023:

a. tending to indicate efforts to smuggle bulk currency from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of bulk currency from the United States into the Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in bulk currency smuggling from the United States into the Mexico;

d. tending to identify travel to or presence at locations involved in the smuggling of bulk currency from the United States into the Mexico, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 31, United States Code, Section 5332, and Title 18, United States Code, Section 371.